[No. 46999–7.   En Banc.   July 30, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. MACK HARRIS THOMPSON, *Appellant.*

*Mark Leemon* of Seattle–King County Public Defender Association, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William L. Downing, Deputy,* for respondent.

DIMMICK, J.—Appellant, Mack Harris Thompson, was convicted of assault in the second degree while armed with a firearm. He asks this court to overturn the conviction and order a new trial on the grounds that the trial court erroneously ruled that defendant's prior convictions could be used for impeachment purposes, excluded evidence of the complaining witness' prior misdemeanor convictions, excluded a statement made by a witness who died before trial, and improperly instructed the jury on the deadly weapon charge. After thoroughly reviewing the record, we find that appellant's claims are without merit, and thus affirm the trial court.

The incident in question arose out of a dispute between appellant and Glorese Gatlin, the complaining witness, over custody of their child. Although neither parent had formally obtained a custody order, the child lived with his mother at the home of her parents, the Stewarts. On the date of the incident, Thompson and his girlfriend, Christie Mustin, went to the Stewart home to pick up the child. Apparently there was a fiery confrontation between all par-

ties, culminating with the shooting of Gatlin.

The testimony at trial was conflicting as to how Gatlin was shot. There was testimony that Thompson had brought the gun into the Stewart home, pointed it at Gatlin, warned her not to call the police, and then deliberately shot her. There was also evidence to the effect that Gatlin was shot accidently as Mr. Stewart and Thompson fought for control of Stewart's gun. One witness testified that Stewart and Thompson each had a gun. Mr. and Mrs. Stewart and Gatlin all changed their stories at various times and the three stories were not completely consistent with each other. Appellant declined to testify, as his motion in limine to exclude evidence of his prior convictions for manslaughter in 1972 and for a 1978 violation of the Uniform Controlled Substances Act (VUCSA) was denied. His theory of self-defense was introduced through the cross-examination of witnesses and the jury was instructed as to that defense.

The jury found Thompson guilty of second degree assault, and also found by special verdict that the underlying felony was committed with a deadly weapon which was a firearm. He was sentenced to a maximum of 10 years in prison.

Appellant contends that the trial court erred in denying his motion in limine to prohibit the use of his two prior convictions, as the prejudicial effect of this evidence outweighed any probative value the evidence might have had.

■ The application of the Washington Rules of Evidence 609(a) permits the use of prior convictions to attack a witness' credibility only if the crime

> (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

This recently adopted rule (1979) was patterned after the Federal Rules of Evidence 609, and is more restrictive than previous Washington law. *State v. Alexis*, 95 Wn.2d 15, 621

P.2d 1269 (1980). ER 609 distinguishes between acts of deceit, fraud, and cheating, which impinge on one's reputation for honesty, and other felonious acts of violence which may, in fact, "result from a short temper, a combative nature, extreme provocation, or other causes, [and] have little or no direct bearing on honesty and veracity." *Gordon v. United States,* 383 F.2d 936, 940 (D.C. Cir. 1967). *See also United States v. Smith,* 551 F.2d 348, 362 (D.C. Cir. 1976). The former acts may be introduced into evidence for the purpose of attacking the credibility of the witness, whereas evidence of the latter convictions may be introduced only after a determination by the court that the probative value of admitting the prior conviction, as it relates to the credibility of the witness, outweighs the possible prejudicial effect on the witness. ER 609(a). In exercising its discretion, the trial court must decide based on individualized considerations, and not on "abstract beliefs about the relation of prior convictions to credibility". *United States v. Bailey,* 426 F.2d 1236, 1239 n.10 (D.C. Cir. 1970).

In determining whether the probative value of the evidence outweighs any prejudicial effect, the courts have considered several factors, foremost of which

> is a comparison of the importance that the jury hear the defendant's account of events with the importance that it know of his prior conviction. *Luck v. United States,* 348 F.2d 763 (D.C. Cir. 1965); *Brown v. United States,* 370 F.2d 242 (D.C. Cir. 1966).

*State v. Alexis, supra* at 19.

Turning to the question at hand, appellant first contends that the admission of the VUCSA conviction should have been excluded because it is both highly prejudicial and of no probative value with respect to his credibility. Although the VUCSA conviction is a felony not directly related to truth and veracity, ER 609 clearly recognizes that these types of felonies may have probative value as to credibility, as demonstrated by the fact that a trial court has the authority to admit these convictions into evidence. *See State v. Brouillette,* 286 N.W.2d 702, 708 n.9 (Minn. 1979).

The Court of Appeals for the Second Circuit has upheld a trial court's decision permitting a conviction for drug trafficking to be introduced into evidence for impeachment purposes as it was probative of a lack of veracity. *United States v. Ortiz,* 553 F.2d 782 (2d Cir. 1977). In so ruling, the Court of Appeals stated that:

> [T]he District Judge in his discretion was entitled to recognize that a narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie.

*Ortiz,* at 784. Similarly, in the instant case the trial court judge was entitled to find that the VUCSA conviction was probative. The potential prejudicial effect of this evidence may be cured by a limiting instruction such as was given in this case for a witness.[1] *See State v. Summers,* 73 Wn.2d 244, 246–47, 437 P.2d 907 (1968).

■ Appellant also challenges the correctness of admitting the 1972 voluntary manslaughter conviction. He contends that this conviction is inadmissible because of its similarity with the offense of second degree assault while armed with a firearm for which appellant was being tried.

The decision whether to admit prior convictions for impeachment purposes is clearly within the discretion of the trial court, *State v. Alexis, supra,* and shall not be disturbed absent a clear showing of abuse. *See United States v. Field,* 625 F.2d 862 (9th Cir. 1980); *United States v. Cook,* 608 F.2d 1175 (9th Cir. 1979), *cert. denied,* 444 U.S. 1034, 62 L. Ed. 2d 670, 100 S. Ct. 706 (1980); *United States v. Hayes,* 553 F.2d 824 (2d Cir. 1977).

Other jurisdictions permit, under identical rules of evidence, use of similar convictions for impeachment purposes, and we see no reason to take issue with these holdings. *See, e.g., United States v. Ortiz, supra* (in a distribution of

---

[1] Instruction No. 4:

"Evidence that a witness has been convicted of a crime may be considered by you in deciding what weight or credibility should be given to the testimony of the witness and for no other purpose."

cocaine trial, allowed prior narcotics conviction); *State v. Soule,* 121 Ariz. 505, 591 P.2d 993 (1979) (in second degree murder trial, allowed prior assault with a deadly weapon, aggravated assault and grand larceny convictions); *State v. Brouillette, supra* (in criminal sexual conduct in the fourth degree trial, upheld the admissibility of prior conviction for criminal sexual conduct in the third degree); *State v. Day,* 94 N.M. 753, 617 P.2d 142, *cert. denied,* 449 U.S. 860, 66 L. Ed. 2d 77, 101 S. Ct. 163 (1980) (in an aggravated burglary trial, allowed prior robbery conviction). The Ninth Circuit in *Cook* upheld the admissibility of prior robbery convictions in a bank robbery trial.

One of the factors some courts consider in determining whether to admit evidence of substantially similar convictions, is the availability of evidence of dissimilar convictions for impeachment purposes. Since this trial, defendant's VUCSA conviction was reversed by this court in *State v. Thompson,* 93 Wn.2d 838, 613 P.2d 525 (1980), so that comparison would no longer be available.

After thoroughly reviewing the record and relevant case law, we find no such abuse of discretion. The trial court allowed both sides to speak on the motion in limine. After hearing arguments, the court ruled the VUCSA conviction admissible, and took the matter of the manslaughter conviction under advisement. At the next morning's session of trial, the court also ruled the manslaughter conviction admissible. It is not necessary that the trial judge state his or her reasons for so ruling. *United States v. Field, supra* at 872 n.6; *United States v. Mahone,* 537 F.2d 922 (7th Cir. 1976). In the future, however, it would be helpful for the trial judge to articulate the reasons. *United States v. Mahler,* 579 F.2d 730, 734 (2d Cir.), *cert. denied,* 439 U.S. 991, 58 L. Ed. 2d 666, 99 S. Ct. 592 (1978). In this case, the trial court, in ruling, did state that the probative value outweighed the prejudicial effect and that it would be probative of credibility only and the jury would be so instructed.

In the alternative, appellant contends that the admission of his manslaughter conviction for impeachment

purposes constitutes constitutional error as the conviction was based on a guilty plea which allegedly violated the standards for guilty pleas established in *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). In *Boykin,* the Supreme Court overturned a conviction which was based on a plea of guilty as the record did not indicate that defendant knowingly and voluntarily entered his plea. In the case at bench, appellant contends that the State must prove that his plea was valid before it can be used for impeachment of credibility, even though the record showed that defendant was represented by counsel at the time the guilty plea was entered.

To date, no court has adopted this approach and we decline to do so now. The United States Supreme Court has ruled that the prior conviction gained without benefit of counsel may not be used in a later trial either to enhance the punishment for another offense, *Burgett v. Texas,* 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967), or to impeach credibility if it influenced the outcome of the case, *Loper v. Beto,* 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014 (1972). *See also State v. Paul,* 8 Wn. App. 666, 508 P.2d 1033 (1973). Appellant contends that *Loper* should be extended so as to prevent the use, for impeachment purposes, of a conviction when it is based on a purported uninformed guilty plea. Appellant looks for support to our recent decision in *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), wherein we rejected the use of a conviction based on an invalid guilty plea for purposes of enhanced sentencing. In *Holsworth,* we recognized that, for purposes of introducing evidence of a prior conviction in a habitual criminal proceeding, there was no cognizable difference between excluding evidence of a prior conviction based on an invalid plea and excluding evidence of a prior conviction obtained without benefit of counsel as was done in *Burgett,* in that both the disclosure requirements of *Boykin* and the right to counsel requirement announced in *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963), are of constitutional magnitude. In

*Holsworth,* however, we were concerned only with the use of an invalid plea in a present criminal sentencing procedure where the prior conviction was an element of the habitual criminal status and therefore must be proved by the State beyond a reasonable doubt. *Holsworth,* at 154. In the instant case, the validity of the guilty plea upon which the conviction was based goes to a purely collateral matter; that is, the credibility of the witness. Thus, the use of a conviction based on an allegedly invalid guilty plea does not impinge on any constitutional right. *See, e.g., State v. Roland,* 379 So. 2d 721 (La. 1979). The Supreme Court's decision in *Loper* does not compel a different result. In *Loper,* the Supreme Court ruled that the use of prior uncounseled convictions for impeachment purposes deprived defendant of due process as the convictions were used to destroy defendant's credibility thereby causing him to have "'suffered anew' from this unconstitutional deprivation". *Loper,* at 484. *Loper,* however, was an extreme case wherein the State was permitted to ask "in damaging detail" about four previous felony convictions occurring as far back as 16 years prior to the trial. *Loper,* at 474. Moreover, unlike the instant case, the convictions were used largely to support guilt rather than merely to impeach credibility. *Loper,* at 482. The only witnesses in the case were Loper and the alleged victim of statutory rape, his 8–year–old stepdaughter. This was a clear case of abuse of judicial discretion.

This is not to say that there is no check on the admissibility of prior convictions. As previously discussed, the court must determine at the outset whether, under our rules of evidence, the conviction is both reliable and probative of credibility. We believe a counseled plea of guilty is prima facie reliable for impeachment purposes. The reason for admission of prior convictions is well stated in the following quote from the Ninth Circuit:

> In the context of the entire record, it is not surprising that the court was unwilling to let a man with a substantial criminal history misrepresent himself to the jury,

with the government forced to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness. *See United States v. Alvarez–Lopez*, 559 F.2d 1155 (9th Cir. 1977).

*United States v. Cook, supra* at 1187. It is especially pertinent, where, as here, the complaining witness also had prior convictions.

Appellant challenges the failure of the trial court to admit into evidence several of the complaining witness' prior misdemeanor convictions. The trial court did, however, admit into evidence Gatlin's 11–year–old grand larceny conviction, and allowed testimony that she had been sentenced to prison.

■ Although misdemeanors are admissible for impeachment purposes if they involve dishonesty or false statement, ER 609(a)(2), it was proper to exclude these misdemeanor convictions as the defense had only the federal and local "rap sheets" as evidence of the convictions instead of certified copies of the judgment and sentence. It did not present any evidence that Gatlin was afforded counsel for any of her prior convictions. A conviction is improper impeachment where the offering party does not produce the record of the conviction "showing on its face that witness . . . was afforded counsel at such proceeding". *State v. Weygandt*, 20 Wn. App. 599, 608, 581 P.2d 1376 (1978), *review denied,* 91 Wn.2d 1024 (1979). *See also Loper v. Beto, supra.*

Appellant next assigns error to the decision by the trial court to exclude the transcript of a tape–recorded statement by Christie Mustin describing the incident. Mustin had passed away several days prior to the commencement of trial. According to appellant, the statement, at least inferentially, indicated that Mustin could have been subject to criminal charges for trespass as she was in the Stewart home without permission. As such, it constitutes an exception to the rule against admitting hearsay, as it was a statement against penal interest. *See* ER 804(b)(3). Appel-

lant's characterization of the statement is somewhat strained, for it was generally exculpatory of both Mustin's and Thompson's responsibility for assault. At the time, they were both under investigation for the shooting of Ms. Gatlin. As such, it is inadmissible under ER 802, the hearsay rule.

Appellant next contends that the trial judge should have defined the term "deadly weapon" as used in the deadly weapon special verdict form, even though he neglected to ask for such an instruction. For support, appellant looks to *State v. Sorenson,* 6 Wn. App. 269, 492 P.2d 233 (1972), wherein the Court of Appeals asserted that it was error in that case not to define the term as the jury had no guidance for determining whether a penknife with a 1½-inch blade constituted a deadly weapon. Appellant's reliance on *Sorenson* is misplaced, as under the facts of this case, the use of the term "deadly weapon" is unambiguous. Even the special verdict form makes clear that a firearm is a deadly weapon.

Finally, appellant contends that the special verdict must be stricken altogether, as the jury was not specifically instructed that the State had the burden of proving the special allegation beyond a reasonable doubt as required by *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980).[2] No such request was made by appellant at trial. The facts herein are clearly distinguishable, for in *Tongate* it was possible that the defendant used a toy gun or other object resembling a deadly weapon to commit robbery, whereas in the instant case only a real gun could have been used, based on the undisputed and graphically illustrated testimony that a bullet entered the body of the complaining witness. Thus, we do not have a *Tongate* issue before this court since the use of the gun was one of the elements the

---

[2]We need not even reach this issue, since appellant's conviction occurred almost 2 months prior to our decision in *Tongate;* the question of the retroactive effect of *Tongate* must be broached. Appellant failed to address this threshold matter or properly brief the issue. *See State v. Claborn,* 95 Wn.2d 629, 632 n.1, 628 P.2d 467 (1981); *cf.* RAP 12.1(a).

State proved beyond a reasonable doubt to support the charge of assault.

We find no abuse of discretion in the trial court's rulings on the admissibility or exclusion of prior convictions, or the hearsay statement of a deceased witness. Under the facts of this case the jury was properly instructed.

We affirm.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, and DORE, JJ., concur.

Reconsideration denied October 6, 1981.