[No. 31412-6-II.   Division Two.   March 7, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. KRISTOFFER JON COOK, *Appellant*.

*Mary Katherine Young High*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Donna Y. Masumoto, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — A jury convicted Kristoffer Cook of one count of third degree assault against his girl friend, Cindy O'Brien. O'Brien initially reported that Cook kicked her hand and broke her finger, but at trial, she testified that her finger was broken in an accident. Cook maintains that the trial court erred in admitting evidence of his prior assaults of O'Brien for purposes of assessing her credibility.

¶2 We hold that evidence of a defendant's prior abuse against the alleged victim may be admissible, not to prove the defendant's propensity to commit the charged offense, but to assess the victim's state of mind at the time of the inconsistent act. We also hold that the admission of such evidence does not require proof that the victim suffers from battered partner syndrome. In addition, we hold that an instruction that informs the jury that it may consider the prior abuse to assess the victim's credibility but fails to eliminate the possibility that the jury will consider the evidence for improper propensity purposes is inadequate. Because the instruction here failed to eliminate the jury's consideration of the challenged evidence for propensity purposes and because the error was not harmless, we reverse.

## FACTS

¶3 The police arrested Cook when he attempted to flee after they intervened in a public altercation between Cook

and O'Brien. O'Brien was Cook's girl friend of seven years and the mother of his six-year-old child. At the time of the arrest, O'Brien told an officer and a fire fighter that Cook had kicked her and broken her finger during an argument at home. She also stated that she was walking toward the hospital when Cook began following her and instructing her to tell others that she broke the finger in an accidental fall.

¶4 The State charged Cook with one count of second degree assault. O'Brien failed to appear on the day of trial despite a State subpoena. Cook presented a notarized letter from O'Brien in which she recanted her statements to the officer and fire fighter. O'Brien's letter stated that she broke her finger when she slipped on water that Cook had spilled. According to the letter, O'Brien lied about the incident because she was mad at Cook for spilling the water. The trial court continued Cook's trial and issued a material witness warrant for O'Brien's arrest.

¶5 O'Brien's presence was eventually secured, and she testified consistent with her letter. Following this testimony, the State questioned O'Brien about six previous incidents of domestic abuse between her and Cook.[1] Cook objected to this testimony, arguing it was unfairly prejudicial, inadmissible under ER 404(b), and inadmissible absent expert testimony that O'Brien suffered from battered partner syndrome and that this syndrome could have caused her to recant her accusations. Citing *State v. Grant*, 83 Wn. App. 98, 920 P.2d 609 (1996), the trial court ruled that evidence of the prior incidents was admissible under ER 404(b) because O'Brien's credibility was a central issue in the case. At the court's request, the following limiting instruction was prepared and given to the jury:

---

[1] These incidents occurred between April 1997 and October 1998, and included: Cook hitting O'Brien and threatening to kill her; Cook violating a no-contact order and stealing O'Brien's car; Cook pushing O'Brien, ransacking her house, and cutting the phone cord when O'Brien tried to call 911; Cook pushing O'Brien; Cook pushing O'Brien while she was driving and then stepping on the gas pedal, causing the car to crash; and Cook violating a no-contact order and begging O'Brien to have contact with him. All but one of these incidents resulted in one or more convictions. As was proper, the jury was not informed of those convictions.

Evidence has been introduced in this case on the subject of prior incidents of domestic violence between Ms. O'Brien and Mr. Cook for the limited purpose of assessing the credibility of (witness) Cindy O'Brien. You must not consider this evidence for any other purpose.

Clerk's Papers at 53.

¶6 A jury found Cook guilty of the lesser included offense of third degree assault.[2] This appeal followed.

## ANALYSIS

¶7 Cook maintains that evidence of prior domestic abuse was not admissible here under ER 404(b). Alternatively, he argues that such evidence was not admissible here because the State failed to provide expert testimony that O'Brien suffered from battered partner syndrome. We disagree with both contentions.

■■ ¶8 ER 404(b) prohibits evidence of prior acts to prove the defendant's propensity to commit the charged crime. *See State v. Holmes*, 43 Wn. App. 397, 400, 717 P.2d 766 ("once a thief, always a thief" is not a valid basis to admit evidence), *review denied*, 106 Wn.2d 1003 (1986). But evidence of prior acts may be admitted for other limited purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). The permitted purposes listed in ER 404(b) are not exclusive. *State v. Kidd*, 36 Wn. App. 503, 505, 674 P.2d 674 (1983). ER 404(b) " 'was intended not to define the set of permissible purposes for which bad-acts evidence may be admitted but rather to define the *one impermissible* purpose for such evidence.' " *State v. Clark*, 83 Haw. 289, 301, 926 P.2d 194 (1996) (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990)). " '[T]he range of relevancy outside the ban is almost infinite.' " *Clark*, 83 Haw. at 300 (quoting McCormick's Handbook on The Law of Evidence § 190, at 448 (Edward W. Cleary ed., 2d ed. 1972)).

---

[2] Cook was also charged and found guilty of obstruction of a law enforcement officer. This conviction is not at issue here.

¶9 The true test for admitting prior acts under ER 404(b) is whether "the evidence serves a legitimate purpose, is relevant to prove an element of the crime charged, and, on balance, the probative value of the evidence outweighs its prejudicial effect." *State v. DeVries*, 149 Wn.2d 842, 848, 72 P.3d 748 (2003); *accord State v. Womac*, 130 Wn. App. 450, 456, 123 P.3d 528 (2005). Evidence is relevant if it has a tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. We review a trial court's decision to admit ER 404(b) evidence for abuse of discretion. *Womac*, 130 Wn. App. at 456.

¶10 Trial courts have properly admitted evidence of past abuse by the defendant against the current alleged victim in a variety of circumstances. Evidence of ill will and prior beatings has been properly admitted to show malice, intent, and motive for murder. *State v. Stenson*, 132 Wn.2d 668, 702-03, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998); *State v. Powell*, 126 Wn.2d 244, 259-61, 893 P.2d 615 (1995). Evidence showing a history of abuse has also been properly admitted to rebut claims that the victim's injuries were accidental. *State v. Hernandez*, 99 Wn. App. 312, 321-23, 997 P.2d 923 (1999), *review denied*, 140 Wn.2d 1015 (2000); *State v. Gogolin*, 45 Wn. App. 640, 646, 727 P.2d 683 (1986). And in *State v. Wilson*, 60 Wn. App. 887, 890-91, 808 P.2d 754, *review denied*, 117 Wn.2d 1010 (1991), we held that evidence of prior physical abuse was admissible to show why the victim submitted to sexual abuse and did not report or escape it.

¶11 Citing our opinion in *Wilson*, Division One held that prior incidents of domestic abuse against the accuser may also be admissible to assess the accuser's "credibility as a witness." *Grant*, 83 Wn. App. at 100. Grant was charged with and convicted for violation of a no-contact order after he assaulted his wife multiple times in one night. Evidence was presented at trial that Grant's wife initially denied the assault when questioned by police and that she minimized the severity of the assaults to Grant's attorney.

¶12 On appeal, Division One rejected Grant's argument that the trial court erred in admitting evidence of his prior assaults against his wife. Division One began its analysis by noting that "victims of domestic violence often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others." *Grant*, 83 Wn. App. at 107. The court also noted that "domestic violence tends to recur, and to intensify in frequency and degree of violence over time. . . . [T]he consequences of domestic violence often lead to seemingly inconsistent conduct on the part of the victim." *Grant*, 83 Wn. App. at 109. The court concluded:

> The Grants' history of domestic violence thus explained why Ms. Grant permitted Grant to see her despite the no-contact order, and why she minimized the degree of violence when she contacted Grant's defense counsel after receiving a letter from Grant, sent from jail. Ms. Grant's credibility was a central issue at trial. The jury was entitled to evaluate her credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim.

*Grant*, 83 Wn. App. at 107-08.

■■ ¶13 We agree with *Grant* that a defendant's prior acts of domestic abuse against the alleged victim may be admissible under ER 404(b). But for the reasons that follow, we disagree with *Grant* that such evidence should be considered by the jury for the generalized purpose of assessing the victim's credibility.

¶14 When an alleged victim acts inconsistently with a disclosure of abuse, such as by failing to timely report the abuse or by recanting or minimizing the accusations,[3] evidence of prior abuse is relevant and potentially admissible under ER 404(b) to illuminate the victim's state of mind at the time of the inconsistent act. *See Powell*, 126 Wn.2d at 261 ("Evidence of previous disputes or quarrels

---

[3] We define an "inconsistent" act as one that taken out of its situational context would appear incongruous to a jury and require explanation. *See State v. Sanders*, 168 Vt. 60, 62, 716 A.2d 11 (1998).

between the accused and the [accuser] . . . 'tends to show the relationship of the parties and their feelings one toward the other, and often bears directly upon the state of mind.' " (quoting *State v. Davis*, 6 Wn.2d 696, 705, 108 P.2d 641 (1940))).[4] This holding is consistent with our decision in *Wilson*, where proof of prior abuse was admissible to illuminate the accuser's mind-set for submitting to and not reporting the charged abuse. In addition, our holding is consistent with decisions allowing evidence of the defendant's prior threatening or violent behavior to show that the accusing witness had a reasonable fear that a charged violent threat would be carried out. *See, e.g., State v. Barragan*, 102 Wn. App. 754, 759-60, 9 P.3d 942 (2000); *State v. Ragin*, 94 Wn. App. 407, 411-12, 972 P.2d 519 (1999); *see also State v. Bourgeois*, 82 Wn. App 314, 319, 917 P.2d 1101 (1996) (defendant's prior threats and attempts to influence a witness's testimony is admissible to prove guilty knowledge), *rev'd on other grounds*, 133 Wn.2d 389, 945 P.2d 1120 (1997).[5]

¶15 Cook maintains that evidence of prior abuse should be admissible only when the party offering it provides expert testimony establishing that the alleged victim suffers from battered partner syndrome. We disagree. While expert testimony may assist a jury in understanding the intricacies of relationships marked by violence, we do not believe such testimony is necessary in order to assess the state of mind of an individual whose acts are inconsistent with a report of abuse. The jury may draw from its own common knowledge and the evidence submitted at trial to determine if the victim's inconsistent behavior is the result of a fear of retaliation, misguided affection, internalized shame or blame, or a continuing dependence on the defen-

---

[4] We do not limit the evidence of prior abuse to acts of "domestic violence" as defined under RCW 10.99.020(3). That definition does not include certain acts, such as verbal abuse, that might be admissible. *See State v. Nelson*, 131 Wn. App. 108, 115-16, 125 P.3d 1008 (2006).

[5] In each of the cited cases, the court addressed the victim's state of mind at the time of the charged event. In this case, we address the witness's state of mind at the time of the witness's trial testimony. This difference is not significant here.

dant. *See Grant*, 83 Wn. App. at 107 n.5 (discussing the potential reasons for inconsistent behavior); Linell A. Letendre, *Beating Again and Again and Again: Why Washington Needs a New Rule of Evidence Admitting Prior Acts of Domestic Violence*, 75 WASH. L. REV. 973, 979-80 (2000) (same). The trial court had discretion to admit evidence of Cook's prior domestic abuse against O'Brien under ER 404(b),[6] provided that the court gave an adequate limiting instruction.

¶16 Here then, we must determine whether the trial court's limiting instruction allowed the jury to use the offered evidence for a proper purpose (to show that O'Brien had a relevant state of mind), while also restricting the jury from using the evidence for an improper purpose (to show that Cook had a propensity to assault O'Brien). If the instruction failed to restrict the jury from using the evidence to show Cook's propensity to assault O'Brien, it was erroneous.

¶17 The following examples highlight how a jury's analysis can differ depending on the court's limiting instruction. If a jury is told it can consider prior abuse to assess an alleged victim's credibility, the jury could structure its analysis as follows:

> Is the wife telling the truth when she testified that her injuries were the result of an accident? The wife initially said that her husband assaulted her; now she denies it. The husband beat her in the past, therefore it is likely that he beat her this time and her testimony that he did not is false.

Such a potential analysis violates ER 404(b) because it focuses on the husband's prior conduct and assumes that because he did it before, he did it now.

¶18 In contrast, if a jury is told it can consider prior abuse to assess an alleged victim's state of mind at the time of an inconsistent act, for example, a trial recantation, the jury would structure its analysis as follows:

---

[6] Cook does not assert that O'Brien's testimony regarding the prior abuse was more prejudicial than probative.

What is her state of mind while testifying? Why would the wife report an assault but now testify that no assault occurred? The couple has a history of domestic violence, so she might be afraid that if she testifies against him, he will retaliate. Maybe she feels responsible for the incident. Maybe she is financially dependent upon him and feels conflicting obligations.

In this second circumstance, the jury's analysis focuses on the state of mind of the witness and the possible bias, fear of retaliation, and conflicting interests she may have in testifying against her husband. The evidence of a defendant's prior assaults is properly offered to illuminate the victim's state of mind, and the jury can use the evidence for that purpose without improperly assuming that "he did it before, he must have done it this time too."

¶19 As these hypotheticals illustrate, a general admonition to consider the prior abuse in determining the alleged victim's credibility is insufficient to ensure that the evidence is not improperly used to prove the defendant's propensity to commit the crime charged.[7] Without an adequate limiting instruction, it was error to admit Cook's prior incidents of abuse against O'Brien. Such error requires reversal if, within reasonable probability, the evidence materially affected the outcome of the trial. *State v. Everybodytalksabout*, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002). Here, we cannot say with sufficient confidence that the jury would have found Cook guilty even if it did not know that Cook had previously assaulted O'Brien on numerous occasions. We must therefore reverse Cook's third degree assault conviction and remand for a new trial.

¶20 Reversed.

HOUGHTON, J., and MORGAN, J. PRO TEM., concur.

---

[7] We note that in *Grant*, expert testimony linked evidence of prior assaults to the victim's state of mind and decreased the likelihood that the jury would engage in an improper propensity analysis.