2014 JUL 28 A 10: 07


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72031-7-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| LARRY MICHAEL STIGALL, | ) | |
| Appellant. | ) | FILED: July 28, 2014 |

TRICKEY, J. — Evidence which is not logically relevant to prove an essential element of the crime charged or establish a common scheme or plan is inadmissible. Here, the trial court improperly admitted evidence of acts that occurred before and after the alleged crime. Because such evidence is unduly prejudicial, we reverse.

A jury convicted Larry Stigall of assault in violation of a court order. The State alleged that on January 13, 2013, Stigall violated an existing protection order by appearing at the home of Tammie White and assaulting her by pushing her, causing her head to slam into the side of the house.[1]

Prior to trial, relying on ER 404(b), the State moved to admit evidence of Stigall's multiple acts of harassment of White that occurred before and after the alleged crime for which he was charged.[2] After hearing argument, the trial court ruled that only the incidents which were reported to 911 and were substantiated by other witnesses could be admitted. The court allowed testimony on the following incidents:

---

[1] Report of Proceedings (RP) at 44, 48.
[2] Clerk's Papers (CP) at 73.

- September 18, 2012: Stigall shouted obscenities at White for not answering his calls. Stigall destroyed a window screen, threw rocks at the house, and let air out of the tires.[3] White's roommate was present and also testified to the circumstances of this incident.[4]
- January 10, 2013: Stigall violated the civil restraining order by going to White's house and shouting obscenities at her. Police responded, but Stigall was not located.[5]
- January 19, 2013: Stigall came to White's front door and White called the police who responded, but did not find Stigall.[6]
- January 31, 2013: Stigall again went to White's residence, yelling at her, bashing her mailbox, yelling that "that was [her] face."[7] White's roommate witnessed the incident.[8] Stigall was located and arrested.

At trial, White testified that Stigall confronted her yelling and screaming and threw her against the house. Officer Bruce Fernie, advised that an assault and violation of court order had taken place, arrived within minutes. He noted that White was visibly shaken.[9] When he entered the house, White "blurted" out that Stigall had pushed her, causing her to hit her head on the side of the house.[10] Officer Fernie observed a bruise and contusion above her left eye. He took photographs of those injuries that were admitted into evidence. Officer Fernie was called back to the house six days later for another violation of the court order, but was unable to locate Stigall.[11]

As noted above, White and her roommate were allowed to testify to the incidents that occurred both before and after the charged crime. The State was required to prove that on January 13, 2013, a protection order existed, Stigall knew of this order, knowingly

---

[3] RP at 38-39.
[4] RP at 68-69. Stigall was convicted of third degree domestic violation malicious mischief.
[5] RP at 43-44.
[6] RP at 51-52.
[7] RP at 52-53.
[8] RP at 70-71.
[9] RP at 77.
[10] RP at 78.
[11] RP at 81-82.

violated it, and his conduct amounted to an assault that occurred in the state of Washington.

The trial court's interpretation of ER 404(b) is reviewed de novo as a matter of law. State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). If the trial court interprets ER 404(b) correctly, we review its decision to admit evidence subject to ER 404(b) for an abuse of discretion. Fisher, 165 Wn.2d at 727. A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Under ER 404(b), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). The list of "other purposes" for admitting evidence under ER 404(b) is not exclusive. State v. Kidd, 36 Wn. App. 503, 505, 674 P.2d 674 (1983).

The trial court orally granted the State's motion, ruling:

I think the State has the obligation to prove knowledge and intent as I read the statute and the proposed instructions, and through proof of the relationship the State may be able to establish knowledge of the existing protections that were in place and an intent to either violate protections or to harass the alleged victim.

In addition to that, the incident in question is, and the incidents that led to these charges are remarkable, similar in the modus operandi, I think that tends to go to the issue of the credibility of the victim and also to the proof of the crime itself.

In other words, these are, while they're isolated in terms of time, the methods employed, the place they occur, either on foot or by bike, the calling of names, the very minor damage to property is a common scheme and thread throughout these 4 incidents, which also applies to the incident in question.

3

So, for those 2 reasons, the proof of intent and knowledge and the proof of common scheme and plan, I am going to admit the testimony.[12]

The question before us is whether the trial court identified a proper purpose for admitting the evidence. Here, the trial court admitted evidence of the incidents as proof of Stigall's knowledge of the restraining order. But none of those incidents prove that Stigall knew of the restraining order. This is particularly true, here, where two of the incidents happened after the date of the charged crime. Further, the State noted in its brief that "[n]othing from the other acts showed Mr. Stigall had knowledge of the order."[13] Thus, this was not a reasonable basis to admit those incidents.

The State argues that "the jury was entitled to know enough to understand why a person riding his bicycle past Mrs. White's house would assault her. Had the trial court not admitted evidence of other crimes, the jury would not know Mr. Stigall's intent when he approached Ms. White."[14] This argument is unpersuasive and in fact supports the exclusion of the evidence. Such evidence is generally inadmissible because it has the potential for leading a jury to determine that a defendant committed the crime simply because he had committed similar actions in the past. State v. Burkins, 94 Wn. App. 677, 687, 973 P.2d 15 (1999).

The other basis cited by the trial court is that the incidents provided evidence of a common scheme or plan. Evidence to show a common scheme or plan is admissible: (1) where several crimes constituted distinct parts of a central plan or (2) where "an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes." State v. Gresham, 173 Wn.2d 405, 422, 269 P.3d 207 (2012) (quoting State v. Lough,

---

[12] RP at 28-29.
[13] Br. of Resp't at 20.
[14] Br. of Resp't at 19-20.

125 Wn.2d 847, 854-55, 889 P.2d 487 (1995)). In admitting the evidence, the court found the similarity in the various incidents to be a "common scheme and thread" applicable to the incident in question.[15] However, the existence of factual similarities between multiple actions does not, in itself, establish that the crimes were committed as part of a common scheme or plan.

Here, the State contends that the testimony was admissible either to establish a distinctive modus operandi or as part of a common scheme or plan. "[M]odus operandi refers to a pattern of criminal conduct in which the method of perpetration is so distinctive that separate crimes are recognizable as the handiwork of one person by their characteristic 'signature.'" State v. Bowen, 48 Wn. App. 187, 193, 738 P.2d 316 (1987). Thus, modus operandi evidence is used to corroborate the identity of the accused as the person who likely committed the wrong, here, as in Bowen, Stigall's identity was not in question. Thus, the testimony was inadmissible to provide a distinctive modus operandi. Bowen, 48 Wn. App. at 193.

Nor can we find justification for the admission of the evidence as a common scheme or plan. It is permissible to establish a common scheme or plan by using evidence that a defendant committed "markedly similar acts of misconduct against similar victims under similar circumstances." Lough, 125 Wn.2d at 852. However, a defendant's previous conduct must bear similarity in significant respects to his conduct in connection with the crime charged as naturally to be explained as caused by a general plan, the similarity is not merely coincidental, but indicates the conduct was directed by design. Lough, 125 Wn.2d at 860. In Gresham, the court held the admission of the "highly

---

[15] RP at 29.

5

prejudicial" evidence of Gresham's prior sexual assault conviction under RCW 10.58.090 not harmless and reversed. Gresham, 173 Wn.2d at 433-34. In Gresham, the court upheld the admission of the sexual offenses under ER 404(b) to show a common scheme or plan. 173 Wn.2d at 421-22.

Here, the admission of the acts bolsters the testimony of the only witness to the assault. Indeed, this is particularly true where two of the acts occurred prior to the attack and two occurred afterward. There is a reasonable probability that the admission of this highly prejudicial evidence of Stigall's acts, both before and after the crime for which he was charged, materially affected the outcome of the trial. Gresham, 173 Wn.2d at 433-34. Admission of such prior acts to prove that Stigall acted consistently with that history when he assaulted White is expressly prohibited by ER 404(b). State v. Donald, 178 Wn. App. 250, 316 P.3d 1081 (2013), review denied, 180 Wn.2d 1010 (2014).

The State relies on State v. Grant, 83 Wn. App. 98, 105, 920 P.2d 609 (1996), for support of its argument that the incidents were admissible to prove intent by showing a relationship between Stigall and White. But Grant is not helpful. There, the court held that the defendant's prior misconduct could be admitted under ER 404(b) to explain why the victim's statements and conduct might appear inconsistent with her trial testimony. Grant, 83 Wn. App. at 105. Here, the witness was not giving testimony contrary to her statements to the State.

Nor is State v. Powell, 126 Wn.2d 244, 893 P.2d 615 (1995), particularly on point. The Powell court held that prior evidence of domestic violence was properly admitted to show the motive for the spouse's murder. Misconduct evidence can be admitted only to prove a material issue when it is "necessary to prove intent when intent is at issue or

when proof of the doing of the charged act does not itself conclusively establish intent." Powell, 126 Wn.2d at 262. This is not the case here. White was available to testify.

The evidence here was not relevant to assess White's credibility because she never changed her story. Courts have admitted prior acts of domestic violence involving a defendant and a victim, to assist the credibility of a recanting victim. State v. Magers, 164 Wn.2d 174, 184, 189 P.3d 126 (2008). Here, there was no recantation.

The trial court issued a limiting instruction informing the jury that the evidence was only to be used for the purpose of "knowledge, intent, a common scheme or plan, or assessing the credibility of the victim."[16] Because we have determined that none of those reasons were valid, the court's issuance of the limiting instruction did not cure the harm and in this instance, may have called the jury's attention to the incidents, making the admissions more prejudicial

The trial court erred in admitting the evidence. Accordingly, we reverse. Because we are reversing the conviction, we need not address the other issues raised by Stigall in both his direct appeal and in his statement of additional grounds.

Tickey, J

WE CONCUR:

---

[16] CP at 45.

7